STATE of Tennessee, Appellee,

v.

Terrance Latroy TURNER and Jermaine Bradford, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

March 6, 2000.

Application for Permission to Appeal Denied by Supreme Court Dec. 11, 2000.

---

Henry R. Allison, III, Nashville, TN, Attorney for Defendant Turner.

Jennifer Lynn Thompson (On Appeal), and Frank T. McLeod (At Trial), Nashville, TN, Attorney for Defendant Bradford.

Paul G. Summers, Attorney General & Reporter, Elizabeth T. Ryan, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, Jim Milam, Assistant District Attorney General, Nashville, TN, for the appellee.

## *OPINION*

WOODALL, Judge.

Defendants Terrance Latroy Turner and Jermaine Bradford were indicted by the Davidson County Grand Jury for aggravated robbery, especially aggravated kidnapping, carjacking, and three counts of attempted first degree murder. Following a jury trial, Bradford was convicted of especially aggravated kidnapping and Turner was convicted of especially aggravated kidnapping and two counts of attempted second degree murder. After a sentencing hearing, the trial court sentenced Bradford to a term of twenty-three years for his especially aggravated kidnapping conviction. In addition, the trial court sentenced Turner to a term of twenty years for his

especially aggravated kidnapping conviction and a term of eight years for each of the attempted second degree murder convictions. The trial court also ordered Turner's especially aggravated kidnapping sentence to run consecutively to the two attempted second degree murder sentences, which were to run concurrently with each other. Defendants raise the following issues on appeal:

1) whether the evidence was sufficient to support Defendants' convictions for especially aggravated kidnapping;

2) whether the fact that a defendant is charged with both robbery and kidnapping means that the evidence is insufficient to support a kidnapping conviction as a matter of law under State v. Anthony, 817 S.W.2d 299 (Tenn.1991);

3) whether the trial court erroneously imposed longer sentences than the Defendants deserve; and

4) whether the trial court abused its discretion when it ordered Defendant Turner's especially aggravated kidnapping sentence to run consecutively to his other sentences.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Misty Perry testified that she went to the Main Street Market in East Nashville on July 23, 1996. Perry saw Bradford while she was in the market, but he did not say anything to her. When Perry went outside, she was approached by Turner, who asked her whether she would like to purchase some marijuana. When Perry responded that she would, Turner then pointed at the street and stated that the marijuana was "over there." At this point, Perry entered her vehicle and sat in the driver's seat and Turner entered the vehicle and sat in the passenger seat. Turner

then stated that they needed to wait for his friend to come out of the market.

Perry testified that after Bradford came out of the market, he entered her vehicle and sat directly behind her. Turner then instructed Perry to drive onto the road and turn right. After Perry followed this instruction, Turner pulled out a gun, held it against Perry's leg, and demanded that she give him her money. When Perry denied that she had any money, Turner stated that he had seen her put money in her pocket. At this point, Turner pointed the gun at Perry's head and asked Bradford whether he should shoot Perry in the head or in the leg. Bradford then replied, "Go ahead and shoot her." After this comment, Turner put the gun against Perry's leg and instructed her to drive down a side street.

Perry testified that when Turner told her to turn down a side street, she became frightened about what might happen to her, so she pulled into the parking lot of a ParMart and jumped out of the moving vehicle. Perry then ran into the store, looked back outside through the glass doors, and saw Turner get into the driver's seat of the vehicle and drive away. The cashier in the store then told Perry that he had called the police.

Detective Norris Tarkington testified that while he was in the Madison area of Davidson County with Detective Dean Haney and Sergeant Freddie Stromatt on July 23, 1996, he heard a radio broadcast about a carjacking. Shortly thereafter, the officers observed a vehicle and two occupants that matched the descriptions that had been provided during the broadcast. The officers then followed the vehicle until it arrived at the Crown Chalet Apartments.

Detective Tarkington testified that when the suspect vehicle entered the apartment complex, it jumped the curb, crashed into

a pickup truck, accelerated back across the street, and started rolling backwards. Turner, who was now the passenger of the vehicle, then fired a shot at Tarkington and Stromatt as they were exiting their vehicle and identifying themselves as police officers. Shortly thereafter, Turner lowered himself below the door frame and fired at least two more shots. The officers subsequently returned fire and Tarkington eventually apprehended Bradford.

Sergeant Freddie Stromatt testified that after the suspect vehicle came to a stop at the apartment complex, he and Tarkington exited their vehicle and yelled, "Police, freeze." When Stromatt and Tarkington got within fifteen feet of the suspect vehicle, Turner stuck a gun out of the passenger side window and fired one shot at them. The officers subsequently returned fired and Turner "disappeared" into the car. At this point, Stromatt believed that Turner had been shot and he approached the vehicle to take Turner into custody. When Stromatt got within seven feet of the vehicle, Turner "popped up in the window again" and fired two more shots at Stromatt. Shortly thereafter, Turner attempted to flee the scene, but he was apprehended by another officer.

Officer Thomas Elder testified that he collected a .380 caliber semiautomatic pistol from inside the suspect vehicle. Thomas subsequently observed that an empty shell casing had "flipped over" and caused the gun to become jammed. Thomas also observed that there were two rounds of ammunition in the gun that could have been fired if the gun had not become jammed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendants contend that the evidence was insufficient to support their convictions for especially aggravated kidnapping.

Defendant Turner does not challenge the sufficiency of the evidence for his two attempted second degree murder convictions.

 Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or re-evaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Tuttle,* 914 S.W.2d 926, 932 (Tenn.Crim.App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

Under Tennessee law, especially aggravated kidnapping is "false imprisonment ... [a]ccomplished with a deadly weapon ...." Tenn.Code Ann. § 39–13–305(a)(1) (1997). In addition, false imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn.Code Ann. § 39–13–302(a) (1997).

## A. Turner's Argument

■ Defendant Turner contends that the evidence was insufficient to support his conviction for especially aggravated kidnapping because there was no proof that he had the required mental state for the commission of the offense.

The evidence in this case, when viewed in the light most favorable to the State, established that Turner tricked Perry into letting him get into her vehicle with her under the guise of being able to supply her with marijuana. After they entered the vehicle, Turner convinced Perry to wait until Bradford could join them. When Perry subsequently followed Turner's driving instructions and pulled onto the street, Turner pulled out a gun, held it against Perry's leg, and demanded that she give him her money. Shortly thereafter, Turner pointed the gun at Perry's head and taunted her by asking Bradford whether he should shoot Perry in the head or in the leg. After Bradford told him to "Go ahead and shoot her," Turner put the gun against Perry's leg and instructed her to drive down a side street. We conclude that this evidence was clearly sufficient for a rational jury to find beyond a reasonable doubt that Turner "knowingly" used a deadly weapon to unlawfully remove or confine Perry so as to substantially interfere with her liberty. Defendant Turner is not entitled to relief on this issue.

## B. Bradford's Argument

■ Defendant Bradford contends that the evidence was insufficient to support his conviction for especially aggravated kidnapping because, even if the proof established that he and Turner unlawfully removed or confined Perry, the removal or confinement was too brief and inconsequential to amount to a substantial interference with Perry's liberty.

■ We note that the proof in the record supports Bradford's assertion that the period of time from when Turner pointed the gun at Perry to when Perry jumped out of the vehicle was relatively brief and the distance traveled was relatively short. However, the period of time and the distance traveled were long enough for Turner to hold the gun against Perry's leg, for Turner to argue with Perry about whether she had any money, for Turner to point the gun at Perry's head, for both Defendants to taunt Perry by indicating that she would be shot, for Turner to place the gun back against Perry's leg, and for Turner to order Perry to drive down a side street. These actions by the Defendants were clearly not inconsequential. Moreover, nothing in the especially aggravated kidnapping statutes requires that the victim be removed for a certain distance or be confined for a certain period of time in order for a defendant's actions to amount to a substantial interference with the victim's liberty. *See State v. Dixon,* 957 S.W.2d 532, 535 (Tenn.1997) (stating that the kidnapping statutes "do[ ] not require a particular distance of removal or any particular duration or place of confinement"). In short, we conclude that the evidence was clearly sufficient for a rational jury to find beyond a reasonable doubt that Bradford committed the offense of especially aggravated kidnapping by assisting Turner's use of a deadly weapon in the knowing and unlawful removal or confinement of Perry that substantially interfered with her liberty. Defendant Bradford is not entitled to relief on this issue.

## III. ANTHONY

Defendant Bradford contends that under *State v. Anthony,* 817 S.W.2d 299 (Tenn.1991), the evidence was insufficient to support his conviction for especially aggravated kidnapping as a matter of law. Specifically, Bradford asserts that under

*Anthony,* a defendant can never be convicted of a kidnapping offense when the evidence indicates that any removal or detention was incidental to a robbery offense.

In *Anthony,* the Tennessee Supreme Court held that when a kidnapping is "essentially incidental" to a robbery, due process prohibits separate convictions for both offenses. The supreme court formulated the following test for determining whether convictions for both offenses violate due process:

> [W]hether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, *sufficient to support a separate conviction for kidnapping,* or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

*Id.* at 306 (citation omitted and emphasis added).

■ It is clear from the express language of *Anthony,* especially the emphasized text, that the *Anthony* analysis only applies when there are *convictions for two offenses* and one offense is essentially incidental to the other. Indeed, when the supreme court subsequently refined the *Anthony* analysis in *State v. Dixon,* 957 S.W.2d 532 (Tenn.1997), the court stated:

> The defendants in both *Anthony* and [its companion case] were convicted of aggravated kidnapping and armed robbery. The issue with which we were confronted in *Anthony* was whether movements or confinements merely incidental to robbery should sustain *separate kidnapping convictions.* We held that a kidnapping conviction violated due process when predicated on movement or confinement that was merely incidental to an accompanying felony and not "significant enough, in and of itself, to warrant independent prosecution."

. . . .

The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support *a separate conviction for kidnapping.*

*Id.* at 534–35 (citations omitted and emphasis added).

■ Contrary to Bradford's assertion, nothing in *Anthony* prohibits trying a defendant for both robbery and kidnapping, even when the kidnapping is essentially incidental to the robbery. The *Anthony* rule does not mean that when a kidnapping is essentially incidental to a robbery, the evidence of the kidnapping is insufficient to support a conviction as a matter of law because any removal or confinement is too short or inconsequential to establish the elements of the offense. Rather, the *Anthony* rule means that separate convictions cannot stand because, even though the evidence is sufficient to support both convictions, principles of due process would be offended by two separate convictions. In this case, although Bradford was tried for both aggravated robbery and especially aggravated kidnapping, he was only convicted of one offense. Accordingly, the *Anthony* test for analyzing the propriety of dual convictions has no application in this case.

In short, the *Anthony* rule is inapplicable because Bradford was convicted of only the especially aggravated kidnapping offense. As previously discussed, the evidence was sufficient to support that conviction. Defendant Bradford is not entitled to relief on this issue.

## IV. LENGTH OF SENTENCES

Defendants contend that the trial court erroneously imposed longer sentences than they deserve for their especially aggravated kidnapping convictions. Defendant Turner does not challenge the length of his two attempted second degree murder sentences.

■■■■ "When reviewing sentencing issues ... including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn.Code Ann. §§ 40–35–103(5), 210(b) (1997 & Supp.1999); *Ashby,* 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." *Id.* Because the record in this case indicates that the trial court did not properly consider the sentencing principles and all relevant facts and circumstances, our review is de novo without a presumption of correctness.

■■■■ Defendants were convicted of especially aggravated kidnapping, a Class A felony. *See* Tenn.Code Ann. § 39–13–305(b)(1) (1997). The sentence for a Range I offender convicted of a Class A felony is between fifteen and twenty-five years. Tenn.Code Ann. § 40–35–112(a)(1) (1997). The presumptive sentence for a Class A felony is the midpoint of the range if there are no enhancement or mitigating factors. Tenn.Code Ann. § 40–35–210(c) (1997). If the court finds that enhancement and mitigating factors are applicable, the court must begin with the midpoint and enhance the sentence to appropriately reflect the weight of any statutory enhancement factors and then the court must reduce the sentence to appropriately reflect the weight of any mitigating factors. *See State v. Chance,* 952 S.W.2d 848, 850–51 (Tenn.Crim.App.1997).

### A. Bradford's Sentence

The record indicates that in determining that Defendant Bradford should serve a term of twenty-three years for his especially aggravated kidnapping conviction, the trial court found that the following enhancement factors applied: (5) Bradford treated or allowed the victim to be treated with exceptional cruelty, (8) Bradford had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, and (13) Bradford committed the felony in this case while on probation from a prior felony conviction. *See* Tenn.Code Ann. § 40–35–114(5), (8), (13) (1997). The trial court also found that no mitigating factors applied.

■■■■ Bradford does not specifically challenge the application of enhancement factor (5), that the victim was treated with exceptional cruelty. However, we conclude that the trial court improperly applied this factor. The trial court did not expressly state why it had applied this factor, but presumably, the court applied the factor because Bradford told Turner to shoot Perry when Turner pointed the gun at Perry's head. While this action was

unquestionably cruel, it did not rise to the level of being "exceptionally cruel", as that term has been interpreted by the Tennessee Supreme Court. The supreme court has stated that before this factor may be applied, the facts in the case must "support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to'" the crime. *State v. Poole,* 945 S.W.2d 93, 98 (Tenn.1997) (citation omitted). *See also State v. Embry,* 915 S.W.2d 451, 456 (Tenn.Crim.App.1995) (holding that application of enhancement factor (5) "requires a finding of cruelty over and above that inherently attendant to the crime"). In this case, both Defendants taunted Perry by insinuating that she would be shot in the head or the leg. However, "[a] threat of the victim being shot is inherent in the offense of an especially aggravated kidnapping that is committed by the use of a firearm." *State v. Quinton Cage,* No. 01C01–9605–CC–00179, 1999 WL 30595, at *10 (Tenn.Crim.App., Nashville, Jan. 26, 1999), *app. denied,* (Tenn. July 12, 1999). Thus, application of enhancement factor (5) was not appropriate.

■ Bradford does not challenge the application of enhancement factor (8), that he had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, and we conclude that this factor was properly applied. Bradford expressly admitted during his testimony at the sentencing hearing that he committed one juvenile offense while he was on probation for another juvenile offense. This Court has previously applied enhancement factor (8) when a defendant violated probation as a juvenile. *See State v. Griffin,* 914 S.W.2d 564, 567–68 (Tenn.Crim.App.1995).

■ Bradford does not expressly challenge the application of enhancement factor (13), that he committed the felony in this case while on probation from a prior felony conviction. However, we conclude that this factor was improperly applied. The record indicates that Bradford committed the offense in this case while he was on probation for a juvenile offense. Even though the juvenile offense would have been a felony if committed by an adult, the adjudication for the juvenile offense cannot support the application of enhancement factor (13) because it was not a felony conviction. *State v. Shane Pillow,* No. 02C01–9707–CC–00243, 1998 WL 351219, at *7 (Tenn.Crim.App., Jackson, July 2, 1998); *State v. Remirus Hayles,* No. 03C01–9603–CR–00113, 1997 WL 346179, at *4 (Tenn.Crim.App., Knoxville, June 25, 1997). Thus, enhancement factor (13) was improperly applied.

■ In our de novo review, we conclude that the trial court should have applied enhancement factor (20), that Bradford was adjudicated to have committed delinquent acts as a juvenile that would have been felonies if committed by an adult. *See* Tenn.Code Ann. § 40–35–114(20) (1997). Bradford admitted during his testimony at the sentencing hearing that he had previously been adjudicated of committing the delinquent acts of sexual battery and possession of the Schedule II controlled substance dilaudid with intent to sell. Sexual battery is a Class E felony. Tenn.Code Ann. § 39–13–505(c) (1997). Possession of the Schedule II controlled substance dilaudid with intent to sell is a Class C felony. Tenn.Code Ann. § 39–17–417(c)(2) (1997). Thus, the trial court should have applied enhancement factor (20).

■ Bradford challenges the trial court's failure to apply mitigating factor (6), that he lacked substantial judgment in committing the offense because of his age. *See* Tenn.Code Ann. § 40–35–113(6) (1997).

Specifically, Bradford argues that this factor should have been applied because he was only fifteen years old when he committed the offense. The Tennessee Supreme Court has stated that when determining the applicability of this mitigating factor, the sentencing court should consider "the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *State v. Adams,* 864 S.W.2d 31, 33 (Tenn.1993). Besides referring to his age at the time of the offense, Bradford has failed to indicate why this factor applied. In fact, Bradford has failed to indicate how his age or anything else affected his judgment when he participated in the especially aggravated kidnapping. As previously mentioned, Bradford's prior juvenile adjudications indicate that he is well-acquainted with the criminal justice system and with the consequences of violating the law. Thus, mitigating factor (6) was not applicable.

 Bradford also challenges the trial court's failure to apply mitigating factor (4), that he played a minor role in the commission of the offense. *See* Tenn.Code Ann. § 40–35–113(4) (1997). Perry testified that Turner convinced her to wait until Bradford could enter the vehicle and Turner did not pull his gun until Bradford had entered the vehicle. In addition, Perry testified that Bradford encouraged Turner to shoot her. Further, although Bradford denied it, Turner testified during the sentencing hearing that Bradford planned to commit a robbery and supplied the weapon that was used to commit the kidnapping offense in this case. Under these circumstances, we conclude that mitigating factor (4) was not applicable. We also conclude in our de novo review that no

other mitigating factors were applicable to Bradford's sentence.

 In short, we conclude that two enhancement factors and no mitigating factors applied to Bradford's sentence. Under these circumstances, we conclude that a sentence of twenty-three years is entirely appropriate. Defendant Bradford is not entitled to relief on this issue.

## B. Turner's Sentence

The record indicates that in determining that Turner should serve a term of twenty years for his especially aggravated kidnapping conviction, the trial court found that enhancement factor (5) applied because Turner treated or allowed the victim to be treated with exceptional cruelty. *See* Tenn.Code Ann. § 40–35–114(5) (1997). The trial court also found that no mitigating factors were applicable.

 Initially, Turner challenges the trial court's application of enhancement factor (5) and we agree that it was improperly applied. As previously mentioned, this factor should not have been applied based on Turner's threat to shoot Perry because "[a] threat of the victim being shot is inherent in the offense of an especially aggravated kidnapping that is committed by the use of a firearm." *Quinton Cage,* 1999 WL 30595, at *10.

 Turner also challenges the trial court's failure to apply mitigating factor (6), that he lacked substantial judgment in committing the offense because of his age. *See* Tenn.Code Ann. § 40–35–113(6) (1997). As previously mentioned, the sentencing court should consider "the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct" when determining whether this factor is applica-

ble. *Adams,* 864 S.W.2d at 33. In support of his contention that factor (6) should have been applied, Turner refers to the fact that he was seventeen years old at the time of the offense and he had no prior criminal record. However, the mere fact that Turner was a relatively young age and had no prior record when he committed the offense in this case does not automatically mean that he "lacked substantial judgment in committing the offense" or that he was unable "to appreciate the nature of his conduct." In fact, we discern no basis in the record for determining that Turner lacked judgment because of his youth. Thus, mitigating factor (6) was inapplicable. Finally, we conclude in our de novo review that no other mitigating factors were applicable to Turner's sentence.

■ In short, we conclude that no enhancement factors and no mitigating factors applied to Turner's sentence. Under these circumstances, we conclude that the presumptive minimum sentence of twenty years is appropriate in this case. Defendant Turner is not entitled to relief on this issue.

## V. CONSECUTIVE SENTENCING

Defendant Turner contends that the trial court abused its discretion when it ordered his especially aggravated kidnapping sentence to run consecutively to his attempted second degree murder sentences.

■ Consecutive sentencing is governed by Tennessee Code Annotated section 40–35–115. The trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria exist. *State v. Black,* 924 S.W.2d 912, 917 (Tenn.Crim.App.1995). For instance, the trial court may order consecutive sentencing if the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in

which the risk to human life is high. Tenn.Code Ann. 40–35–115(b)(4) (1997). However, when this factor is used, the court is required to determine that consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. *State v. Wilkerson,* 905 S.W.2d 933, 939 (Tenn.1995).

■ The record indicates that in determining to impose partial consecutive sentencing, the trial court found that Turner was a dangerous offender. We agree with the determination that Turner is a dangerous offender with little regard for human life and no hesitation about committing a crime in which the risk to human life is high. Indeed, Turner pointed the gun at Perry's head and taunted her by indicating that she would be shot for no apparent reason and shortly thereafter, Turner fired three shots at police officers from close range after they had identified themselves as police.

The trial court made no express finding that the *Wilkerson* test was satisfied. However, we conclude that it is. First, consecutive sentencing is clearly related to the severity of the offenses. Indeed, Turner was convicted of three serious felony offenses and he put several lives at great risk during his criminal escapade. Second, consecutive sentences are required in this case in order to protect the public from further criminal conduct by Turner. In addition to the dangerous conduct already noted, it appears that Turner was prevented from firing even more shots at the police officers only because the gun became jammed. Clearly, Turner's conduct toward Perry and the police officers indicates that he will not hesitate to threaten or actually use violence against others. Further, although Turner claimed that he was sorry for what he had done, the tran-

script of his testimony at the sentencing hearing indicates that he attempted to place most of the blame for his actions on Bradford and the influence of the devil. Turner's violent actions and failure to accept full responsibility for those actions indicates that he poses a continuing threat to the public. Finally, consecutive sentencing in this case is congruent with general principles of sentencing. Defendant Turner is not entitled to relief on this issue.

## VI. CONCLUSION

After reviewing the briefs, the record, and the governing law, we find no reversible error as to either Defendant. Accordingly, the judgment of the trial court is AFFIRMED.

SMITH, J., and LAFFERTY, Senior Judge, concur.